UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, TRINET HR XI, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>DURIN MUNDAHL, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF JOYE M. BRAUN; AND MORGAN BRINGS PLENTY, INDIVIDUALLY;<br><br>Defendants. | 3:24-CV-03029-RAL<br><br>ORDER ON PENDING MOTIONS IN ADVANCE OF MOTION HEARING |

Durin Mundahl and Morgan Brings Plenty (collectively "Defendants") sued Plaintiffs Metropolitan Life Insurance Company ("MetLife") and TriNet HR XI, Inc. ("TriNet") (collectively "Plaintiffs") in the Cheyenne River Sioux Tribal Court asserting that Plaintiffs wrongfully paid benefits from Defendants' deceased mother's life insurance plan. Plaintiffs then filed this action invoking federal jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA") and seeking a preliminary injunction to prevent Defendants from proceeding with their action in tribal court. Doc. 13. Defendants filed a Special Appearance and Answer, Doc. 11, in which they sought a jury trial but, rather than counterclaiming, asserted that this Court lacked jurisdiction.

This Court held a hearing, granted Plaintiffs' motion for a preliminary injunction, Doc. 34, entered a Scheduling Order restricting discovery in this ERISA-governed case, Doc. 39, and after

the parties filed a Joint Status Report, set a briefing schedule, Doc. 41, indicating that if the Court cannot decide the matter on summary judgment, it would hold a court trial. Plaintiffs filed an Opening Brief, Doc. 42, seeking a permanent injunction preventing further tribal court proceedings and a ruling upholding the denial of claims benefits to Defendants. Defendants filed a Cross Motion for Summary Judgment, Doc. 43, seeking judgment, interest, and attorney's fees. Plaintiffs then moved to strike Defendants' Cross Motion, Doc. 46, because this Court's prior order did not contemplate Defendants bringing a motion for summary judgment. For the reasons explained below, Plaintiffs' Motion to Strike, Doc. 46, is denied and this Court will hear argument on November 30, 2026, on what it deems to be cross-motions for summary judgment.

## I. Background

### A. Facts Not in Dispute

The parties do not dispute many of the core facts. Joye M. Braun ("Joye") was a member of the Cheyenne River Sioux Tribe and full time employee of Indigenous Environmental Network ("IEN") starting in 2022. Doc. 1-1 ¶ 1; Doc. 23 at 11–12. Plaintiff TriNet provided human resource services for IEN, including providing group insurance plans, handling payroll, and issuing Joye's paychecks. See Doc. 23 at 12; Doc. 24-12. Defendants are the natural children of Joye and reside in Eagle Butte on the Cheyenne River Indian Reservation. Doc. 1 ¶¶ 3–4; Doc. 1-1 ¶ 1. Joye was married to Floyd Braun[1] ("Floyd"), but she filed a divorce action in tribal court on October 25, 2022. AR_000151–54. Floyd may have deserted Joye over a year before her death. See Doc. 23 at 14; see also AR_000062 (death certificate listing marital status as "married but

[1] Floyd Braun's name sometimes appears in the record as Floyd Durin. See Doc. 1 ¶ 16. For clarity, this Court will refer to him as Floyd to prevent confusion with Joye or Defendant Durin Mundahl.

separated"). Defendants claim that Joye's listed marital status on TriNet generated payroll forms was "single" since at least June 2022. Doc. 23 at 14.

Joye participated in an ERISA-governed life insurance and accidental death and dismemberment ("AD&D") plan (the "Plan") sponsored by TriNet as a benefit of her employment with IEN and paid premiums by payroll deductions. Doc. 1 ¶ 10; Doc. 23 at 12–13; see AR_000001–57. Joye's Plan listed a Certificate Date of January 1, 2019. AR_000001. Screenshots from Joye's TriNet account list her Coverage Begin Date and Deduction Begin Date as July 1, 2022, and Election Date as August 3, 2022. AR_000058–59. The Plan provided basic life insurance coverage of $40,000 and AD&D coverage of an additional $40,000. AR_000023. Plaintiff MetLife is the claim administrator and provider of the benefits under the Plan. AR_000052–53.

During an "open season," Joye submitted a benefit election on November 4, 2022, designating the Defendants (her biological children) as her life insurance beneficiaries. Doc. 23 at 15; Doc. 24-9 at 2; see also AR_000071–75. Plaintiffs' Open Enrollment Confirmation stated "Thank you for submitting your TriNet benefit elections for the upcoming benefits plan year (January 1, 2023–December 31, 2023)" and listed both Defendants as 50% beneficiaries of Joye's Life and AD&D coverage under the Plan. AR_000071–72.

Joye died suddenly and unexpectedly on November 13, 2022. AR_000062. Her death certificate stated she died from "natural causes." Id. The death certificate lists cause of death as "cardiac arrest, COVID 19 infection, hypertensive heart disease," and the manner of death as "natural causes." Id. After Joye's death, the Tribal Court dismissed Joye's divorce petition. AR_000155.

According to MetLife's Claim Comments List, Durin Mundahl ("Durin") called MetLife about a month after Joye's passing, asking about the status of Joye's benefits and informing MetLife that he was Joye's son. AR_000181–82. Two weeks later, Durin called again asking what he needed to do in order to start his claim, and MetLife responded that it had not yet received all the necessary information from Joye's employer. AR_000181. Durin expressed his belief that he and his sister were the beneficiaries of Joye's Plan and indicated that he was in contact with TriNet—who had purportedly confirmed his belief regarding his status as a beneficiary—to obtain documents reflecting as much. Id. Durin called again on January 11, 2023, and explained that Joye and Floyd had been in the process of divorcing before Joye's passing and that Joye wanted the Plan benefits to go to her children. AR_000179.

Upon inquiring into Joye's Plan, MetLife found that Joye initially had no listed beneficiary. AR_000179–80. The Plan contained a provision regarding distribution of benefits where no beneficiary is named, stating: "If there is no Beneficiary designated or no surviving designated Beneficiary at Your death, We may determine the Beneficiary to be one or more of the following who survive You: Your Spouse or Domestic Partner; Your child(ren); Your parent(s); or Your sibling(s)." AR_000049. Plaintiffs believe that Joye lacked a designated beneficiary at the time of her death and that her "open season" designation of Defendants was not effective until January 1, 2023. Accordingly, MetLife located Floyd via internet search on January 17, 2023, and requested he complete a claimant statement. AR_000178–79.

On January 19, 2023, Durin forwarded to MetLife the "Open Enrollment Confirmation" email originally from TriNet to Joye, confirming that Joye had submitted "TriNet benefit elections for the upcoming benefits plan year (January 1, 2023–December 31, 2023)." AR_000071. Durin called MetLife the same day to discuss the email, understanding it to confirm his belief that

Defendants were Joye's beneficiaries under the Plan. AR_000177–78. Durin called MetLife again the following day and MetLife then explained that the Open Enrollment Confirmation email reflected Joye's designations for the 2023 enrollment, and MetLife needed a beneficiary designation from 2022. AR_000177. On January 31, 2023, MetLife left a voicemail for Durin indicating that TriNet had also advised MetLife that the Open Enrollment Confirmation beneficiary designation did not go into effect until January 1, 2023. AR_000175.

Concluding that Joye was survived by a lawful spouse and that her open season designation made was not effective at the time of her death, MetLife sent a letter to Floyd on February 17, 2023, requesting missing claimants statement documents. Id. On March 22, 2023, MetLife sent Floyd a "30 Days Letter." Id. Floyd called MetLife in April 2023 to check the status of his claim, and later resubmitted documents for his claimant statement. Id. MetLife then paid Floyd $40,191.74 in life insurance benefits. AR_000105–07.

**B. Procedural Posture**

The pending motions—Defendants' Cross Motion for Summary Judgment, Doc. 43, and Plaintiffs' Motion to Strike, Doc. 46—reflect differences in how the parties read this Court's prior order and view the matter's current procedural posture. This Court's prior rulings make clear that this an ERISA-governed case with relatively narrow issues that appear to drive the outcome. Doc. 34; Doc. 37 at 1–2. This Court's scheduling order on December 5, 2025, recognized that, despite the grant of Plaintiffs' preliminary injunction, the parties maintained disparate views regarding whether the case was ERISA governed, and which court should exercise jurisdiction. Doc. 39 at 1. In response, this Court clarified that the previous opinion and order, Doc. 34, resolved those matters. This case is ERISA-governed, and this Court has jurisdiction over ERISA-governed claims whereas a tribal court does not. Doc. 39 at 1. This Court ordered that the parties notify this

Court when depositions were completed, and whether the matter could be submitted on cross-motions for summary judgment, or if a court trial ought to occur. Id. at 2.

In the parties' status report on April 2, 2026, Plaintiffs asserted that no court trial would be necessary, and "the issues should be decided based upon briefing subject to the administrative record, which has been produced." Doc. 40 at 1. Defendants, on the other hand, "prefer[ed] to hold a Court Trial with live and/or recorded witnesses, who will testify as to the material facts and circumstances concerning the critical events and transactions between the parties." Id. at 2. This Court then set deadlines for the Plaintiffs' motion for summary judgment, Defendants' response brief, and Plaintiffs' reply. Doc. 41. This Court indicated that if it could not decide the matter on summary judgment, a court trial would be set. Id.

Plaintiffs filed their Opening Brief on June 15, 2026. Doc. 42. Plaintiffs' brief does not mention Federal Rule of Civil Procedure 56, the standard for summary judgment, or the words "summary judgment" anywhere. See id. Plaintiffs did not file a separate statement of material facts as required for a motion for summary judgment under D.S.D. Civ. LR 56.1A. Plaintiffs ask for a permanent injunction barring Defendants from pursuing their claim in tribal court, and a "ruling upholding MetLife's determination." Id. at 22. Plaintiffs have not formally moved for summary judgment but are seeking judgment in their favor based on the Administrative Record.

Defendants then filed three documents: (1) a cross motion for summary judgment, Doc. 43, (2) the affidavit of Robin Zephier in support of the motion, Doc. 45, and (3) a response to Plaintiffs' opening brief, Doc. 44. Defendants ask this Court to "rule that the Plaintiffs, particularly MetLife, abused their discretion in denying the Defendants' claim for the Plan benefits" and that the Defendants "are entitled to judgment against the Plaintiffs for the policy limits." Doc. 43 at 32. Defendants also ask for prejudgment and post judgment interest, and attorney's fees. Id. In

response, Plaintiffs moved to strike Defendants' Cross Motion for Summary Judgment, arguing that this Court's "three-step sequence for briefing," which did not include a deadline for Defendants to file a cross motion for summary judgment, was "consistent with typical briefing scheduling involving ERISA actions based on an administrative record where a court reviews the decision of the claims administrator." Doc. 46 at 1.

The Federal Rules of Civil Procedure apply to ERISA cases. This Court's prior order inviting Plaintiffs to file a motion for summary judgment was meant to, as the United States Court of Appeals for the Eighth Circuit has put it, be "a vehicle for submitting the case to the district court for decision on the administrative record." Avenoso v. Reliance Standard Life Ins., 19 F.4th 1020, 1024 (8th Cir. 2021). In some circuits such as the First Circuit, a district court "may weigh the facts" and "resolve conflicts in evidence" when deciding a summary judgment motion in a matter contesting an ERISA benefits determination. Id. (citing Doe v. Harvard Pilgrim Health Care, Inc., 974 F.3d 69, 72 (1st Cir. 2020)). This is not the law in the Eighth Circuit. Avenoso, 19 F.4th at 1024. While the Eighth Circuit has treated bench trials and summary judgment *similarly* in ERISA cases where the plan administrator has discretionary authority, summary judgment remains distinct from a bench trial. Id. at 1025; see also id. at 1026 ("[A] bench trial could involve presentation of new evidence, including witness testimony. Summary judgment would then serve the important function of sparing the court, the parties, and the witnesses the time and expense of a bench trial in the event that the case can be resolved without one."). Consistent with Avenoso, this Court will treat Plaintiffs' Opening Brief filed on June 15, 2026, with the Administrative Record as a motion for summary judgment. This opinion and order then leaves the cross-motions for summary judgment undecided pending the hearing set for November

30, 2026, and will deny the motion to strike. Nevertheless, to guide the parties' arguments and presentations on November 30, 2026, some further discussion of the pending motions is helpful.

## II. Motions for Summary Judgment and to Strike

### A. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

However, a different standard applies when a court is ruling in an ERISA-governed case. The standard for a district court reviewing a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." McIntyre v. Reliance Standard Life Ins., 972 F.3d 955, 958–59 (8th Cir. 2020) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "Where the benefit plan gives the administrator such discretionary authority, a court should review the plan administrator's decision only for abuse of discretion." Id. (cleaned up and citation omitted). Where a court reviews the decision for abuse

of discretion, "the administrator's decision should be reversed 'only if it is arbitrary and capricious.'" Green v. Union Sec. Ins., 646 F.3d 1042, 1050 (8th Cir. 2011) (quoting Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 893 (8th Cir. 2009)). The touchstone for arbitrary and capricious review is reasonableness. Id. ("The administrator's decision should be affirmed if it is reasonable, meaning it is supported by substantial evidence . . . .[s]ubstantial evidence is more than a scintilla but less than a preponderance." (internal citations omitted)). Reasonableness turns on whether a reasonable person "*could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Id. (emphasis in original) (cleaned up and citations omitted). The Eighth Circuit has outlined five factors to consider when determining whether an administrator's interpretation of plan language is reasonable:

> [W]hether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

Finley v. Special Agents Mut. Benefits Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992). "Review of a plan administrator's discretionary decision must be limited to the administrative record, but additional evidence may be admitted for the limited purpose of determining the proper standard of review." Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps., 812 F.3d 628, 634 (8th Cir. 2016) (cleaned up and citation omitted).

Here, Joye's Plan expressly gave the Plan administrator "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." AR_000055. Thus, the administrator's decision to pay

Floyd rather than the Defendants seems subject to review for abuse of discretion based on the Administrative Record.

**B. Discussion**

Defendants argue that summary judgment is proper because Plaintiffs acted arbitrarily and capriciously in paying Joye's benefits sum to Floyd, instead of the Defendants. Doc. 43 at 7–13. Defendants assert that the Plaintiffs "operat[ed] under a material conflict of interest, misinterpreted and ignored their own drafted Plan language, and thereby abused their discretion by paying $40,000 of Plan MetLife life insurance benefits to an undesignated, unnamed Plan beneficiary contrary to the Plan and federal law." Id. at 8. Defendants allege that Joye had a beneficiary designation on file at the time she began her employment at IEN. E.g., Doc. 44 at 3, 5, 22. In support of their argument, Defendants attached a screenshot taken on July 14, 2026, of Joye's Beneficiary Information on the TriNet Platform. Doc. 45-2 ("Exhibit 14"). Such a screenshot does not appear in the Administrative Record, however, Defendants also offer "other facts which delve further into the Plaintiffs' abuse of discretion[,]" including Plaintiffs' operating the TriNet Online platform, and Joye's most recent payroll deposit indicating her marital status as single. Doc. 44 at 20–21 (emphasis omitted). The second half of Defendants' Cross Motion for Summary Judgment asks for prejudgment interest, post judgment interest, attorney's fees, and a judgment against the surety bond posted by Plaintiffs. Doc. 44 at 13–21.

Plaintiffs did not file a response to Defendants' Cross Motion for Summary Judgment, but instead moved to strike the motion. Doc. 46. Plaintiffs' Opening Brief, Doc. 42, and Reply Brief, Doc. 47, suffice as an opposition to the cross-motion for summary judgment.[2] Plaintiffs rely on

---

[2] Plaintiffs' briefs ask this Court to issue a permanent injunction, barring Defendants from asserting their claims in Tribal Court, and a "ruling upholding MetLife's determination." Doc. 47 at 19. Defendants argue that Plaintiffs' request for a permanent injunction is moot because this Court has

the Administrative Record, asserting that because Joye did not have a beneficiary designation on file that was effective when she died and was still legally married to Floyd at the time of her death, MetLife acted reasonably in paying Floyd under to the listed beneficiary order in the Plan. Doc. 42 at 7. Plaintiffs argue that under the Plan language, they would have been liable to Floyd had they paid Defendants. E.g., Doc. 47 at 14.

Plaintiffs acknowledge that Joye filled out a beneficiary designation naming Defendants as her beneficiaries shortly before she died. Plaintiffs assert that this designation was an election via the open enrollment process and thus not effective until January 1, 2023, a date after her death. Id. Plaintiffs attached TriNet's Summary Plan Description (SPD), which, under the "Beneficiary Designation Changes" heading, states "You may change your beneficiary designations at any time by completing and submitting a Beneficiary Designation Form, available on TriNet." Doc. 42-2 at 38. This, Plaintiffs argue, differs from the "open enrollment" process also outlined in SPD as "generally occur[ing] two months prior to the start of the next benefits plan year" where "coverage elections will become effective for the upcoming benefits plan year." Id. at 30. The SPD was not included in the Administrative Record.

In response to Defendants' Exhibit 14 screenshot showing Joye's status as "single" and listing Defendants as Joye's beneficiaries, Plaintiffs submitted the Affidavit of Amanda Williams, senior manager at Benefits Compliance, for TriNet USA, Inc. (of which TriNet HR XI is a subsidiary). Doc. 47-1. Williams avers that Defendants' attachment shows that the Defendants were designated as beneficiaries *after* the open enrollment period (i.e. what a person viewing the

---

already ruled on the jurisdictional issues of the case, and because Defendants "intend to immediately discontinue any access to any Tribal Court regarding this particular ERISA matter." Doc. 44 at 16–17.

designation would see now) but not what the designation would have been at the time of Joye's death. Doc. 47-1 ¶ 5.

Williams's affidavit does not explain when the designation change was entered or why it would have entered somehow after Joye died and after Plaintiffs chose to pay Floyd. Under the "General Provisions" of the Plan, Joye was entitled to designate a beneficiary at the time she enrolled and change such beneficiary designation at any time via a signed and dated form. AR_000049. The Plan stated that, where there is no designated beneficiary at the time of the insured's death, the Plan Administrator may determine the beneficiary to be "one or more of the following who survive You," listing "Your Spouse" above "Your child(ren)." Id. Below the list of potential beneficiaries, the Plan also stated "[i]nstead of making payment to any of the above, We may pay Your estate. Any payment made in good faith will discharge our liability to the extent of such payment." Id. Emails between Plaintiffs and Joye indicate that Joye's elections made shortly before her death were part of the open enrollment period with an effective date of January 1, 2023. AR_000071–72. Joye was separated, pursuing a divorce, but still legally married at the time of her death. AR_000062.

The Plan Documents and application of the Plan language controls here. See Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, 555 U.S. 285, 300 (2009) ("The Estate's claim therefore stands or falls by the terms of the plan . . . ." (cleaned up and citation omitted)). The United States Supreme Court in Kennedy created what has come to be known as the "Plan Documents Rule," where courts favor strict adherence to ERISA Plan documents to avoid forcing plan administrators to review "multitude[s] of external documents that might purport to affect the dispensation of benefits." Id. at 301 (citations omitted); see also Matschiner v. Hartford Life & Accident Ins., 622

F.3d 885, 887 (8th Cir. 2010) (holding that the "'plan documents rule' of Kennedy applies to the payment of benefits under both [employee pension benefit and welfare benefit] plans").

A few issues remain unclear to address at the upcoming hearing. First, the parties dispute whether Joye ever had a beneficiary designation on file before her November 4, 2022, open season designation of the Defendants. The Administrative Record suggests that Joye did not though the Defendants claim she did. AR_000058–59; see also AR_000167 (claims comments indicating "the decedent did not have a completed beneficiary designation on file with the Plan when the death occurred"). This Court wants to know what evidence, if any, exists regarding whether Joye designated a beneficiary at the time she began her employment and enrolled in the Plan.

Second, some of the Plaintiffs' conduct should be better explained. It is unclear when and why Plaintiffs updated the beneficiary designation to reflect that Joye had designated the Defendants. The Administrative Record shows that the Plaintiffs were aware that Defendants believed themselves to be the rightful beneficiaries. TriNet had purportedly confirmed Defendants' belief before MetLife eventually clarified that the open enrollment beneficiary designation form Joye had recently submitted was not effective until the new year. See AR_000169–81. Thereafter, Plaintiffs found Floyd via internet search, asked him to complete a claims statement, and eventually paid him the benefits. See AR_000178–79. Plaintiffs could have filed an interpleader action under Federal Rule of Civil Procedure 22, but instead sought out Floyd to have him complete a claim to pay him, notwithstanding rather clear indication of what Joye's wishes were upon her completion of the beneficiary designation in November of 2022. Perhaps Plaintiffs did not have to file an interpleader action, because, as the Supreme Court put it in Kennedy:

> The Estate's suggestion that a plan administrator could resolve these sorts of disputes through interpleader actions merely restates the problem with the Estate's

> position: it would destroy a plan administrator's ability to look at the plan documents and records conforming to them to get clear distribution instructions, without going into court.

555 U.S. at 301. Still, this Court wants to give counsel an opportunity to explain why Plaintiffs did or did not behave in an arbitrary and capricious manner or whether there is any argument that an interpleader action under the circumstances should have been required.

Third, the parties may also want to address Defendants' argument that Plaintiffs had a "structural conflict of interest" under ERISA, which, if true, would be one factor in the abuse of discretion analysis. The conflict of interest allegedly stems from MetLife's status as both the decider and funding source of the claim. Finally, the parties may address whether a permanent injunction would indeed be necessary should this Court rule for the Plaintiffs. For now, this Court deems there to be cross-motions for summary judgment pending on which argument will be heard on November 30, 2026.

## III. Conclusion

For the reasons explained above, it is hereby

ORDERED that Plaintiffs' Motion to Strike, Doc. 46, is denied. It is further

ORDERED that the parties prepare to address any factual or legal misapprehensions that may exist in this opinion and order and prepare to address the issues identified herein.

DATED this 19th day of November, 2026

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE